UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------------------------------------- x
KEON RUSSELL,                                                   :

                             Plaintiff,      :      REPORT &
                                                  :      RECOMMENDATION
   -against-                                 :
                                                  :      No. 22-CV-2057-LDH-JRC
CITIGROUP and CITIBANK N.A. DBA CITI,    :

                          Defendants.    :

------------------------------------------------------------------- x

JAMES R. CHO, United States Magistrate Judge:

       Plaintiff Keon Russell ("Plaintiff") brings this action alleging violations of U.C.C. Article 4-A, New York's Uniform Commercial Code ("N.Y. U.C.C.") § 4-A-202, § 4-A-203, and § 4-A-204, and negligent infliction of emotional distress against defendants, Citibank N.A. ("Citibank") and Citigroup Inc. ("Citigroup," and collectively, "Defendants"). On March 10, 2022, Plaintiff commenced this action in New York State Supreme Court, Kings County. *See* Dkt. 1. On April 11, 2022, Defendants timely removed this case to the Eastern District of New York. *See* Dkt. 1. On April 12, 2022, Plaintiff filed a motion to remand. *See* Dkt. 6.[1]

       Currently pending before this Court, on a referral from the Honorable LaShann DeArcy Hall, is Plaintiff's motion to remand this case to state court. *See* Order Referring Motion (April 13, 2022). For the following reasons, this Court respectfully recommends **denying** Plaintiff's motion. Moreover, this Court respectfully recommends, *nostra sponte*, **dismissing** all claims asserted against Defendant Citigroup.

---

[1] References to Plaintiff's Motion to Remand (Dkt. 6) appear as "Pl.'s Mot.," to the "Memorandum of Law of Citibank, N.A. and Citigroup Inc. in Opposition to Plaintiff's Motion to Remand" (Dkt. 10) as "Opp.," and to "Plaintiff's Reply to Defendant's Opposition to Motion to Remand" (Dkt. 11) as "Pl.'s Reply."

I.     **Relevant Factual and Procedural Background**

In the Complaint, Plaintiff alleges that Defendants "fail[ed] to protect its customers' accounts and funds therein against theft." Compl. (Dkt. 1-1) at 2. Plaintiff alleges that on October 14, 2021, a criminal actor accessed Plaintiff's checking account held by Citibank and transferred $29,400 from Plaintiff to the criminal actor. *Id.*

On April 11, 2022, Defendants removed this action from New York State Supreme Court, Kings County on diversity jurisdiction grounds.[2] Dkt. 1 at ¶ 6. Defendants represent that "plaintiff and the real party in interest, Citibank, N.A., are citizens of different states: Plaintiff is a citizen of New York and Citibank is a citizen of South Dakota." Opp. at 1.

Plaintiff moves to remand the instant suit back to state court. *See generally* Pl.'s Mot. Plaintiff argues that because "[t]his case neither concerns a federal question necessary to the resolution of [P]laintiff's claims nor involves diversity of citizenship between the parties," this Court should remand the instant suit. Pl.'s Mot. at 1. Plaintiff contends that Citigroup and Citibank both have their principal place of business at 388 Greenwich Street, New York, New York 10013 and conduct business in the State of New York. *See* Pl.'s Reply at 3.

Defendants oppose Plaintiff's motion and argue that Citibank has a principal place of business in South Dakota, as set out in its articles of association. *See* Notice of Removal (Dkt. 1) at ¶ 5; Opp. at 7. Because Plaintiff is a citizen of New York, Defendants argue that diversity jurisdiction exists pursuant to 28 U.S.C. § 1332. Defendants further contend that Citigroup,

---

[2] Defendants initially alleged federal question jurisdiction as an alternative basis for removal. *See* Dkt. 1 at ¶ 11. However, Defendants now concede that federal question jurisdiction does not exist in this case. *See* Opp. at 1 n.1.

which has its principal place of business in New York, was "fraudulently joined" in this action.[3] Defendants argue that Citigroup, a holding company, had no involvement in the alleged misconduct, and therefore, Plaintiff cannot defeat removal by including Citigroup as a party defendant. *See* Opp. at 5. Defendants argue that this Court has jurisdiction based on diversity pursuant to 28 U.S.C. § 1332(a) because the only two proper parties in this action are citizens of different states (*i.e.*, Plaintiff of New York and Citibank of South Dakota), and the amount in controversy exceeds $75,000.

## II. Applicable Legal Standards

### A. Subject Matter Jurisdiction

Federal courts are "'courts of limited jurisdiction' and may not preside over cases absent subject matter jurisdiction." *Griffith v. Citi Mortg. Inc.*, No. 16-cv-6042, 2016 WL 6601448, at *1 (E.D.N.Y. Nov. 7, 2016) (quoting *Exxon Mobil Corp. v. Allapattah Servs., Inc.*, 545 U.S. 546 (2005)). "Congress has granted district courts original jurisdiction over cases in which there is a federal question, see 28 U.S.C. § 1331, and certain cases between citizens of different states, so long as the requirements of complete diversity and amount in controversy are met, see 28 U.S.C. § 1332." *Id.* (quoting *Perdue Pharma L.P. v. Kentucky*, 704 F.3d 208, 213 (2d Cir. 2013)). "[W]hen a federal court concludes that it lacks subject-matter jurisdiction, the court must dismiss the complaint in its entirety." *Id.* (quoting *Arbaugh v. Y & H Corp.*, 546 U.S. 500, 514 (2006)).

To establish diversity jurisdiction, a corporation is deemed a citizen of the state where it has its principal place of business and of the state where it is incorporated. *See* 28 U.S.C. § 1332(c); *see also Hershfeld v. JM Woodworth Risk Retention Grp., Inc*., No. 16-cv-6369, 2017

---

[3] Defendants do not set forth in their opposition whether Citigroup is domiciled in New York, asserting only that "Citigroup's citizenship should be ignored because it was fraudulently joined." Opp. at 8.

3

WL 1628886, at *3 (E.D.N.Y. May 1, 2017). A company's "principal place of business" refers to "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hershfeld*, 2017 WL 1628886, at *3 (quoting *Hertz Corp. v. Friend*, 559 U.S. 77, 92-93 (2010)). However, "for purposes of subject matter jurisdiction, a national bank is a citizen only of the state in which its main office is located." *Onewest Bank, N.A. v. Melina*, 827 F.3d 214, 216 (2d Cir. 2016). The Supreme Court "has held unequivocally that a national bank is 'located,' for diversity jurisdiction purposes, in the state designated in its articles of association as the locus of its main office -- not in every state in which it has branch offices." *Id.* at 218 (citing *Wachovia Bank v. Schmidt*, 546 U.S. 303, 307 (2006)); *see also* 28 U.S.C. § 1348. Accordingly, "a national bank is a citizen only of the state listed in its articles of association as its main office." *See OneWest Bank*, 827 F.3d at 219.

### B.   Removal to Federal Court

A defendant may remove to federal court "any civil action brought in a State court of which the district courts of the United States have original jurisdiction." 28 U.S.C. § 1441(a). Section 1441(b) provides that an action is not removable if the district court's original jurisdiction is based on diversity of citizenship and any of the defendants "is a citizen of the State in which such action is brought." 28 U.S.C. § 1441(b).

Once a case has been removed to federal court, 28 U.S.C. § 1447(c) provides that "[i]f at any time before final judgment it appears that the district court lacks subject matter jurisdiction, the case shall be remanded." 28 U.S.C. § 1447(c). "When a party challenges the removal of an action from state court, the burden falls on the removing party 'to establish its right to a federal forum by competent proof.'" *Hershfeld*, 2017 WL 1628886, at *3 (quoting *In re Methyl Tertiary Butyl Ether Prods. Liab. Litig.*, No. 00-cv-1898, 2006 WL 1004725, at *2 (S.D.N.Y. Apr. 17,

4

2006)).

Further, "[i]n light of the congressional intent to restrict federal court jurisdiction, as well as the importance of preserving the independence of state governments, federal courts construe the removal statute narrowly, resolving any doubts against removability." *Lupo v. Human Affairs Int'l, Inc.*, 28 F.3d 269, 274 (2d Cir. 1994) (citing *Shamrock Oil & Gas Corp. v. Sheets*, 313 U.S. 100, 108 (1941)). When removal is based on diversity, "there must be diversity both at the time that the plaintiff filed the action in state court and at the time of removal." *Hershfeld*, 2017 WL 1628886, at *3; (citing *Grupo Dataflux v. Atlas Global Grp.*, L.P., 541 U.S. 567, 570-71 (2004); *United Food & Commercial Workers Union, Local 919, AFL-CIO v. Ctr. Mark Props. Meriden Square, Inc.*, 30 F.3d 298, 301 (2d Cir. 1994)).

### C. Fraudulent Joinder of Parties

While it is commonly accepted that "the well-pleaded complaint rule generally requires a district court to determine if a complaint includes any causes of action that on their face give a federal court jurisdiction," *MBIA Ins. Corp. v. Royal Bank of Canada*, 706 F. Supp. 2d 380, 388 (S.D.N.Y. 2009) (citing *Rivet v. Regions Bank of Louisiana*, 522 U.S. 470, 475 (1998)), there is an exception to this rule "when a defendant asserts removal based on 'fraudulent joinder.'" *Id.* (quoting *Whitaker v. American Telecasting, Inc.*, 261 F.3d 196, 206-07 (2d Cir. 2001) ("[A] plaintiff may not defeat a federal court's diversity jurisdiction and a defendant's right of removal by merely joining as defendants parties with no real connection with the controversy.")). Courts regularly review pleadings to determine, in the first instance, "if there has been a fraudulent joinder of parties" and will "disregard parties with no real connection to the controversy" or who are not "a real party in interest." *Id.* (citing *Pampillonia v. RJR Nabisco, Inc.*, 138 F.3d 459, 460-61 (2d Cir. 1998)). "[I]n the context of fraudulent joinder, all uncertainties in applicable

5

state law are resolved in favor of the plaintiff, and the complaint is subjected to less searching scrutiny than on a motion to dismiss for failure to state a claim." *Battaglia v. Shore Parkway Owner LLC*, 249 F. Supp. 3d 668, 671 (E.D.N.Y. 2017) (citing *Campisi v. Swissport Cargo Servs. LP*, No. 09-cv-1507, 2010 WL 375878, at *2 (E.D.N.Y. Jan. 26, 2010); *Sherman v. A.J. Pegno Constr. Corp.*, 528 F. Supp. 2d 320, 328-29 (S.D.N.Y. 2007) (explaining that it is not enough for a defendant asserting fraudulent joinder to show that the plaintiff's cause of action would not survive a motion to dismiss)).

"To demonstrate that a non-diverse defendant has been fraudulently joined to defeat diversity, a defendant must show, by clear and convincing evidence, either that there has been outright fraud committed in the plaintiff's pleadings (a claim not made here), or that there is no possibility, based on the pleadings, that a plaintiff can state a cause of action against the non-diverse defendant in state court." *MBIA,* 706 F. Supp. 2d at 393 (internal citations omitted); *Pampillonia*, 138 F.3d at 461.

"Even if non-diverse defendants are joined solely to prevent removal to federal court, fraudulent joinder is not shown if the plaintiff does in fact have a valid claim against the non-diverse defendants." *In re Zyprexa Prods. Liab. Litig.*, No. 08-cv-3249, 2008 WL 4561628, at *3 (E.D.N.Y. Oct. 10, 2008). "The defendant seeking removal bears a heavy burden of proving fraudulent joinder, and all factual and legal issues must be resolved in favor of the plaintiff." *Pampillonia*, 138 F.3d at 461.

The proper test to determine fraudulent joinder asks whether a plaintiff can establish a claim against the defendant under state law, not federal law. *See Fed. Ins. Co. v. Tyco Int'l Ltd.*, 422 F. Supp. 2d 357, 378 (S.D.N.Y. 2006) (internal quotation marks omitted). Accordingly, the state pleading rules relevant to the particular pleadings at issue are applied in this analysis.

*MBIA,* 706 F. Supp. 2d at 393; *Gensler v. Sanolfi-Aventis*, No. 08-cv-2255, 2009 WL 857991, at *3 n.3 (E.D.N.Y. Mar. 30, 2009). In New York, a liberal pleading standard is applied when determining whether a viable claim is alleged against a defendant. *See MBIA,* 706 F. Supp. 2d at 393-94 (explaining that under New York's liberal pleading rules, plaintiff need only provide "basic information concerning the nature of plaintiff's claim and the relief sought") (internal citations omitted).

Even under New York's liberal pleading standards, plaintiff still must make a basic allegation of a "cause of action known to our law." *Schlackman v. Robin S. Weingast & Assocs., Inc.*, 18 A.D.3d 729, 729 (N.Y. App. Div. 2005). Indeed, Courts in the Second Circuit allow for removal to federal court on the basis of fraudulent joinder "despite the presence of non-diverse defendants if the claims against those defendants have no basis in fact." *In re Rezulin Products Liab. Litig.*, 133 F. Supp. 2d 272, 281 (S.D.N.Y. 2001).

### III. Discussion

#### A. Fraudulent Joinder of Parties

Plaintiff, in his remand motion, argues that Citigroup and Citibank are "sufficiently linked as parties in interest [in this case] and are almost indistinguishable to the public with Citibank acting as the banking agent of Citigroup." Pl.'s Mot. at 3. Plaintiff further states that "Citigroup's website promotes and details how to make online wire transfers from one's Citibank checking, savings or money market account to non-Citi accounts." *Id*. at 4.

In opposition, Defendants argue that defendant Citigroup was fraudulently joined in this action. Opp. at 5. Defendants argue that Plaintiff has no cause of action against defendant Citigroup because the "complaint contains no independent claim against Citigroup, Inc." *Id*. Defendants argue that "plaintiff appears to have joined Citigroup Inc. simply because it is

7

Citibank's corporate parent." *Id*. Specifically, Defendants argue that in Plaintiff's Complaint, he makes no particular allegations against Citigroup, but for statements to indicate that Citibank is a subsidiary of Citigroup with a principal place of business in New York, New York. *See* Compl. at ¶ 2 ("*Citigroup Inc*. is a Delaware corporation with its principal place of business at 388 Greenwich Street, New York, New York 10013. Defendant does business in the State of New York and in the Eastern District of New York and can be served with process through its registered agent, The Corporation Trust Company, Corporation Trust Center, 1209 Orange Street, Wilmington, New Castle, DE 19801) (emphasis added); Compl. at ¶ 3 ("Citibank, N.A. is a banking subsidiary of Defendant *Citigroup Inc*. with its principal place of business at 388 Greenwich Street, New York, New York 10013. Defendant does business in the State of New York and in the Eastern District of New York, with many consumer banking and retail locations therein, and can be served with process through its President, Chief Executive Officer, Sunil Garj, 388 Greenwich Street, New York, New York 10013. Citibank, N.A. owns and operates the website www.citibank.com.") (emphasis added).

In Plaintiff's Reply, Plaintiff explains that he intended to refer to both Citigroup and Citibank as "Citi" in the Complaint as if they were one entity, even though they are separate corporate entities.[4] *See* Compl. at 2; Pl.'s Reply at 2-3. The Complaint refers to Citibank and Citigroup collectively in the singular as "Bank" or "Defendant." *See* Compl. at 2. Throughout the Complaint, Plaintiff refers to "Citibank" as either "Citibank" or "Citi." *See, e.g*., Compl. at 2 (Nature of the Action) ("Mr. Russell's *Citi* checking account . . ."); Compl. at ¶ 6 ("Mr. Russell has been a *Citibank* customer . . ."); Compl. at ¶ 7 ("Mr. Russell regularly uses his *Citi* account

---

[4] *See* Compl. at ¶ 2 (Citigroup is a Delaware corporation); Compl. at ¶ 3 (Citibank is a banking subsidiary of Defendant Citigroup, Inc.).

8

. . ."); Compl. at ¶ 26 ("Mr. Russell immediately called *Citibank* . . ."); Compl. at ¶ 27 ("When Mr. Russell asked the *Citi* representative . . ."). Plaintiff further explained in the Reply that "Citi" also referred to Citigroup. Pl.'s Reply at 2-3.

Even though Plaintiff makes no specific reference to Citigroup itself in the Complaint, other than, in general, to identify its place of business and that Citibank is a subsidiary of Citigroup, Compl. at ¶¶ 2, 3, Plaintiff seeks to hold Citigroup jointly responsible with Citibank for Plaintiff's alleged damages. In his Reply, Plaintiff clarified that he, in fact, made a specific allegation regarding Citigroup in paragraph 42 of the Complaint. Plaintiff claims that "[o]n November 15, 2021, in response to a text and email sent by a family member on his behalf to the CFO of Citi, Mark Mason, Mr. Russell was contacted by Lori-Ann Paris a representative from the Executive Response Unit who claimed she would be looking into his case." Compl. at ¶ 42; Reply at 3. Plaintiff explains that Mr. Mason is CFO of *Citigroup*, not Citibank. Reply at 2.

At issue, here, is whether the references to Citi – whether referring to Citigroup or not – and the one reference to a complaint raised with the CFO of Citigroup, Mr. Mason, sufficiently assert a state law claim against Citigroup and whether these allegations are sufficient to withstand a claim of fraudulent joinder under New York's liberal pleadings standard. While this Court does not find that joinder of Citigroup by Plaintiff was the result of fraud (nor does Defendant raise this argument), based on the facts as alleged, this Court does find that there is no possibility that Plaintiff can state a cause of action against Citigroup – a non-diverse defendant -- in state court, as discussed below. For this reason, this Court respectfully recommends denying Plaintiff's remand motion.

Plaintiff raises two causes of action: violations of the New York Uniform Commercial Code sections 4-A-202, 4-A-203, and 4-A-204, and negligent infliction of emotional distress.

9

### 1. New York Uniform Commercial Code Claim

Plaintiff does not allege that Citigroup violated the New York U.C.C., nor does this claim apply to Citigroup. As set forth in Count 1 (violation of U.C.C. Article 4-A, N.Y. U.C.C. § 4-A-202, § 4-A-203, and § 4-A-204), Plaintiff refers repeatedly to the alleged violations of *Citibank*, not Citigroup. *See* Compl. at ¶ 51 ("The wire transfer was neither authorized nor effective as a payment order from/of Mr. Russell under U.C.C. Article 4-A. or N.Y. U.C.C. § 4-A in that **Citibank did not employ any commercially reasonable method of providing security** . . . .") (emphasis in original); Compl. at ¶ 51(a) ("Citibank failed . . ."); Compl. at ¶ 51(b) (Citibank accepted wire transfer instructions . . ."); Compl. at ¶ 51(c) ("Citibank's security procedures for funds transfers are inferior to those of other banks . . ."); Compl. at ¶ 51(d) (". . . Citibank was or should have been aware of the widespread cases of bank fraud . . ."); Compl. at ¶ 52 ("The wire transfer was neither authorized nor effective as a payment order from/of Plaintiff under U.C.C. Article 4-A. or N.Y. U.C.C. § 4-A-102 in that **Citibank did not accept and execute the order in good faith** . . .") (emphasis in original); Compl. at ¶ 53 ("The wire transfer was neither authorized nor effective as a payment order from/of Plaintiff under U.C.C. Article 4-A. or N.Y. U.C.C. § § 4-A-102, 4A-202(1), 4-A-204(1) in that Citibank did not accept and execute the order in compliance with any commercially reasonable security procedure."). Plaintiff's claims of violations of the New York U.C.C. are directed toward Citibank, not Citigroup.

Further, Plaintiff makes clear in the Complaint that Defendants' conduct after the wire transfer had occurred, including Defendants' alleged mistreatment of him and their inadequate investigation, do not relate to whether Defendants violated the N.Y. U.C.C., but are merely *illustrative*. *See, e.g.,* Compl. at ¶ 52(f) ("Moreover, Citi's reckless disregard, incompetence, and unprofessionalism in dealing with Plaintiff's timely complaint of the wire transfer fraud

combined with its severely lacking, purported investigation is *illustrative* and telling, and sheds light on its obvious failure to act in good faith to prevent the fraud against Plaintiff.").

### 2.  Negligent Infliction of Emotional Distress Claim

With respect to Plaintiff's second alleged cause of action -- negligent infliction of emotional distress -- a corporate parent cannot be held liable for the tortious actions of its subsidiary.  Courts have routinely held that no cause of action can be maintained against a bank's holding company based on misconduct by its bank subsidiary.  *See Pincover v. J.P. Morgan Chase Bank, N.A.*, 592 F. Supp. 3d 212, 217 n.3 (S.D.N.Y. 2022) (dismissing defendant J.P. Morgan Chase & Co. ("JPMorgan"), a holding company, because the Complaint failed to plead any facts implicating JPMorgan in the alleged fraud) (citing *Akhtar v. JPMorgan Chase & Co.*, No. 652274/2018, 2019 WL 4237985, at *4 (N.Y. Sup. Ct. Sept. 6, 2019) (dismissing JPMorgan on grounds that it "cannot be held liable for the alleged actions or inaction of Chase Bank" and noting that "[t]here is no dispute that [JPMorgan] is a holding company that does not provide banking services.  There is also no dispute that Chase Bank provided banking services to [the plaintiffs], not [JPMorgan]"); *cf. In re Aluminum Warehousing Antitrust Litig.*, No. 13-md-2481, 2015 WL 1344429, at *3 (S.D.N.Y. Mar. 23, 2015) (dismissing JPMorgan from action where plaintiffs failed to "set[ ] forth any specific facts that suggest any participation by . . . [JPMorgan] in the allegedly unlawful conduct.  Instead, the claims as to them are based solely on corporate proximity")).

Plaintiff cannot assert a claim against Citigroup solely based on its position as Citibank's corporate parent unless Plaintiff, *inter alia*, seeks to "pierce the corporate veil."  However, "New York courts have displayed a considerable reluctance to pierce the corporate veil of the parent of a subsidiary."  *Miller v. Citicorp*, No. 95-cv-9728, 1997 WL 96569, at *9 (S.D.N.Y. Mar. 4,

11

1997) (citation omitted).  In New York, in order for a plaintiff to "pierce the corporate veil," the plaintiff must plead "(i) that the owner exercised complete domination over the corporation with respect to the transaction at issue; and (ii) that such domination was used to commit a fraud or wrong that injured the party seeking to pierce the veil." *Gutierrez v. J.P. Morgan Chase Bank & Co.*, No. 09-cv-2257, 2009 WL 1059636, at *1 (S.D.N.Y. Apr. 13, 2009).  Accordingly, a plaintiff must plead (1) that the parent company, Citigroup, dominates and controls Citibank and (2) that the parent company, Citigroup, used its domination and control to commit a wrong or fraud that injured the plaintiff.

Here, Plaintiff fails to allege in his Complaint that Citigroup "dominates and controls" Citibank, and that Citigroup used its "domination and control" to commit the wrong or fraud that caused Plaintiff's injuries.  Plaintiff does not allege that Citigroup caused Citibank to execute the unauthorized fund transfer.  Further, when Plaintiff sought relief from Citibank, Plaintiff does not allege that Citigroup ordered Citibank to refuse to issue Plaintiff a refund.  *See id*. (proposed amended complaint "does not assert that this alleged domination was used to commit a wrong or fraud that injured the plaintiff.").  Plaintiff has not alleged that Citigroup took any action that caused Plaintiff to experience an injury sufficient to "pierce the corporate veil."

Plaintiff further attempts to impute liability on Citigroup based on an alternate theory of a principal/agency relationship.  "Suing a parent corporation on an agency theory is quite different from attempting to pierce the corporate veil," because, on an agency theory, "the claim against the parent is premised on the view that the subsidiary had authority to act, and was in fact acting, on the parent's behalf -- that is, in the name of the parent." *Sahu v. Union Carbide Corp*., No. 04-cv-8825, 2012 WL 2422757, at *16 (S.D.N.Y. June 26, 2012), *aff'd sub nom. Sahu v. Union Carbide Corp*., 528 F. App'x 96 (2d Cir. 2013) (quoting *Royal Indus. Ltd. v. Kraft Foods, Inc*.,

12

926 F. Supp. 407, 412 (S.D.N.Y. 1996)). "A corporate parent's ownership interest in a subsidiary, standing alone, is insufficient to demonstrate the existence of an agency relationship." *Bigio v. Coca-Cola Co.*, 675 F.3d 163, 175 (2d Cir. 2012). Under New York law, "an agency relationship results from a manifestation of consent by one person to another that the other shall act on his behalf and subject to his control, and the consent by the other to act." *Id.* (citation omitted). "[T]o establish actual agency, a plaintiff must demonstrate the following elements: (1) manifestation by the principal that the agent shall act for him; (2) the agent accepted the undertaking; and (3) an understanding between the parties that the principal is to be in control of the undertaking." *Spagnola v. Chubb Corp.*, 264 F.R.D. 76, 89 (S.D.N.Y. 2010). In this context, control is still generally viewed as the central element of an agency relationship. *See id*; *In re Parmalat Sec. Litig.*, 594 F. Supp. 2d 444, 451 (S.D.N.Y. 2009).

In the remand motion and Reply, while Plaintiff argues that Citigroup "dominates, controls, and operates Citibank" and makes repeated, references to Citigroup's "control" over Citibank, Plaintiff has failed to identify facts suggesting that Citigroup's relationship with Citibank was anything other than that of a parent and its subsidiary. Plaintiff does not allege that Citigroup specifically instructed Citibank to execute the unauthorized transfer at issue here, or further directed Citibank not to refund the funds to Plaintiff. Plaintiff further does not allege that Citibank lacked the authority or needed consent to act on its own without first seeking permission from Citigroup. *See Maung Ng We v. Merrill Lynch & Co., Inc.*, No. 99-cv-9687, 2000 WL 1159835, at *7 (S.D.N.Y. Aug.15, 2000) ("The essence of control in an agency sense is in the necessity of the consent of the principal on a given matter. Otherwise, if the subsidiary has discretion to act, the parent cannot justifiably be said to have the essential right of control over its subsidiary's actions."); *Nw. Nat. Ins. Co. of Milwaukee, Wis. v. Alberts*, 769 F. Supp.

13

498, 508 (S.D.N.Y. 1991) ("[A]n agency relationship only exists if the agent acts primarily for the benefit of the principal and not for himself."). Simply put, there is no allegation that Citibank's action were undertaken solely for Citigroup's, as opposed to its own, benefit. Further, Plaintiff has no basis for inferring that Citibank surrendered its discretionary authority to execute the transfer at issue here or offer Plaintiff a refund. Allowing Plaintiff's claim against Citigroup to proceed would undermine the liability-limiting function of corporate structures and would contravene the well-established judicial principal that agency liability in the parent-subsidiary context is "remote." *Spagnola*, 264 F.R.D. at 88-89. Based on the facts before the Court, because Plaintiff cannot assert a plausible agency claim against Citigroup, this claim cannot proceed against Citigroup under a principal/agency theory.

In his remand motion, Plaintiff also argues that he intended to assert an independent claim of negligent infliction of emotional distress against Citigroup, notwithstanding the corporate relationship between Citigroup and Citibank. Specifically, Plaintiff appears to argue that he has asserted a tort claim against Citigroup based on the single complaint raised with Citigroup's CFO Mark Mason. *See* Compl. at ¶ 42. Plaintiff acknowledges that Mr. Mason acted upon his complaint by referring the complaint to Lori-Ann Paris, a representative of the Executive Response Unit. *See* Compl. at ¶ 42.

Under New York law, the tort of negligent infliction of emotional distress has four elements: (1) breach of a duty owed to the plaintiff, which breach either unreasonably endangered the plaintiff's physical safety or caused the plaintiff to fear for his or her physical safety; (2) extreme and outrageous conduct; (3) a causal connection between the conduct and the injury; and (4) severe emotional distress. *See Smith v. City of New York*, No. 14-cv-4982, 2015 WL 4008642, at *2 (E.D.N.Y. June 30, 2015) (internal citations omitted). In New York, the

requirement of extreme and outrageous conduct to properly allege a negligent infliction of emotional distress ("NIED") claim is identical to that of an intentional infliction of emotional distress ("IIED") claim. *Regeda v. City of New York*, No. 09-cv-5427, 2012 WL 7157703, at *12 (E.D.N.Y. Sept. 7, 2012) (citing *Simpson ex. Rel. Simpson v. Uniondale Union Free Sch. Dist.*, 702 F. Supp. 2d 122, 134 (E.D.N.Y. 2010) ("The elements of a claim for intentional infliction of emotional distress are nearly identical to a claim for negligent infliction of emotional distress. The intentional infliction of emotional distress claim differs only in that it includes the element of intent to cause emotional distress.")). Accordingly, for both an NIED and an IIED claim, the plaintiff must allege that "extreme and outrageous conduct" was the proximate cause of plaintiff's injury.

Plaintiff argues that Citigroup negligently caused him emotional distress in its handling of a single complaint filed by him. *See* Compl. at ¶ 42. NIED claims require specific proof of a duty owed by the defendant to the plaintiff and a breach of that duty. *See Druschke v. Banana Republic, Inc.*, 359 F. Supp. 2d 308, 315 (2005) ("recovery for negligent infliction of emotional distress 'is circumscribed to unique facts where a special duty is owed.'") (citations omitted)); *see also Gutierrez*, 2009 WL 1059636, at *1 (with respect to a negligence claim, plaintiff "alleges no basis for concluding either that [JPMorgan Chase & Co, a financial holding company,] owed plaintiff any duty, that it breached any such duty, or that plaintiff was injured as a proximate consequence of such a breach.").

Plaintiff fails to assert a claim of NIED against Citigroup based on the single complaint to the Citigroup CFO sufficient to withstand a fraudulent joinder claim. Plaintiff has not identified the basis for any claim that Citigroup owed Plaintiff any duty, let alone that Citigroup breached any duty owed Plaintiff. Plaintiff has made clear that he held an account with Citibank,

15

not Citigroup.  *See* Compl. at ¶ 6; *see, e.g., Mortise v. United States*, 102 F.3d 693, 696 (2d Cir. 1996) (concluding that a plaintiff could not sustain a claim for negligent infliction of emotional distress where the duty owed by the defendant was not "specific to the plaintiff").

Further, the alleged conduct where Citigroup, in fact, acted on the complaint, albeit not to Plaintiff's satisfaction, does not rise to the level of "extreme and outrageous conduct" sufficient to survive a claim of fraudulent joinder.  *See Hughes v. Patrolmen's Benevolent Ass'n of the City of New York*, 850 F.2d 876, 883 (2d Cir. 1988) (Under New York law, "extreme and outrageous conduct," as an element in tort "transcends the bounds of decency as to be regarded as atrocious and intolerable in a civilized society."); *Regeda*, 2012 WL 7157703, at *12 (explaining that the element of "extreme and outrageous conduct" under New York law is applicable to both IIED and NIED.).

Plaintiff has failed to allege sufficient facts necessary to state even a possible claim against Citigroup, and in the absence of such facts there can be no "cause of action known to our law" against Citigroup alleged in the Complaint.  *See Schlackman*, 18 A.D.3d at 729.  Accordingly, Defendants have established that defendant Citigroup was fraudulently joined in this action.  *Cf. Fed. Ins. Co.,* 422 F. Supp. 2d at 378 (internal quotation marks omitted).  For these reasons, this Court respectfully recommends dismissal of Citigroup as a fraudulently joined party.

    **B.**    **Subject Matter Jurisdiction**

The parties agree that there exists no jurisdiction in this case based on federal question.  *See* Reply at 2 ("Defense does not rebut Plaintiff's argument that this case does not concern a federal question."); Opp. at 1 n.1.  Since there is no federal question at issue, this Court considers solely whether removal was proper on the basis of diversity jurisdiction as to Plaintiff and

defendant Citibank.

First, the parties agree that Plaintiff is a citizen of New York for purposes of this action. *See* Pl.'s Mot. at 3; Opp. at 7-8. Second, Citibank is a national banking association with a charter address and main office located at 5800 S Corporate Place, Sioux Falls, South Dakota 57108. *See* Notice of Removal at ¶ 5.

"[F]or purposes of subject matter jurisdiction, a national bank is a citizen only of the state in which its main office is located." *See Onewest Bank*, 827 F.3d at 216. "[F]or diversity jurisdiction purposes" the Supreme Court "has held unequivocally that a national bank is 'located'. . . in the state designated in its articles of association as the locus of its main office -- not in every state in which it has branch offices." *Id*. at 218 (internal citation omitted). Further, the Second Circuit has made clear that, "a national bank is a citizen only of the state listed in its articles of association as its main office." *Id*. at 219. Defendant Citibank, therefore, is a citizen of South Dakota for purposes of this action. Plaintiff and Citibank are diverse parties.

Third, neither party disputes that the "matter in controversy exceeds $75,000, exclusive of interest and costs" in accordance with 28 U.S.C. § 1332. *See* Compl. at 18 ("Plaintiff, Keon Russell, respectfully requests the Court enter a judgment against Defendants Citigroup Inc. and Citibank N.A. in the amount of $147,000 . . ."); Opp. at 7 ("Federal diversity jurisdiction exists in this case because [] the matter in controversy exceeds $75,000.00, exclusive of interest and costs . . .").

Plaintiff, as a citizen of New York, and defendant Citibank, as a citizen of South Dakota, are diverse parties. Accordingly, since defendant Citibank has established the existence of diversity jurisdiction, this Court respectfully recommends denying Plaintiff's motion to remand.

17

## Conclusion

For the reasons stated herein, this Court respectfully recommends denying Plaintiff's motion to remand, Dkt. 6.  Further, this Court respectfully recommends dismissal of the claims against the non-diverse defendant Citigroup on fraudulent joinder grounds.

A copy of this Report and Recommendation is being electronically served on counsel. Any objections to the recommendations made in this Report must be filed with the Honorable LaShann DeArcy Hall within 14 days after the filing of this Report and Recommendation and, in any event, on or before **March 10, 2023**.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2). Failure to file timely objections may waive the right to appeal the District Court's order.  *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 6(d), 72; *Small v. Sec'y of Health & Human Servs*., 892 F.2d 15, 16 (2d Cir. 1989) (*per curiam*) (discussing waiver under the former ten-day limit).

**SO ORDERED**

Dated:  Brooklyn, New York
         February 24, 2023

s/ James R. Cho
James R. Cho
United States Magistrate Judge
